**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION**

| | | |
|---|---|---|
| NICHOLAS MATTHEW BARKLEY, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 1:26-cv-1382 |
| TRUIST BANK | ) | |
| | ) | |
| & | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JPMORGAN CHASE BANK, | ) | |
| NATIONAL ASSOCIATION | ) | |
| | ) | |
| & | ) | |
| | ) | |
| AMERICAN EXPRESS COMPANY | ) | |
| | ) | |
| & | ) | |
| | ) | |
| CITIBANK N.A. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| TRANS UNION, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | | |

Defendants.

<u>**COMPLAINT AND JURY DEMAND**</u>

COMES NOW, Plaintiff Nicholas Matthew Barkley, by and through the undersigned counsel,

and for his Complaint against Defendants Truist Bank ("TB"), JPmorgan Chase Bank, National

Association ("JPMCB"),  American Express Company ("AEC"), Citibank N.A. ("CBNA"), Trans

1

Union, LLC ("TU"), Equifax Information Services, LLC ("EQ") and Experian Information Solutions, Inc. ("EXP") (and together collectively, "Defendants") for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

## JURISDICTION

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1681(p).

2. Venue is proper because EXP is headquartered in Cuyahoga County, Ohio, the acts and transactions occurred here, and TB, JPMCB, AEC, CBNA, TU, EQ, and EXP transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Hickory, a part of Catawba County, North Carolina 28601.

6. The acts that occurred giving rise to this complaint occurred while Defendant was headquartered in Ohio, making the Northern District of Ohio a proper venue under 28 U.S. Code § 1391(b)(2).

## STANDING

7. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

8. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, INC. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate

chains of causation that will give rise to a case or controversy where none existed before.); <u>Bellwood v. Dwivedi</u>, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

9. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

## PARTIES

10. Plaintiff, Nicholas Matthew Barkley (hereafter "Plaintiff"), is a natural person currently residing in Catawba County, in the state of North Carolina.

11. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

12. Defendant TB is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 214 N Tyron St, Charlotte, NC 28202.

13. Defendant JPMCB is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 6497, Sioux Falls, SD 57117.

14. Defendant AEC is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 200 Vesey Street, World Financial Center, New York, NY 10285.

15. Defendant CBNA is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 6497, Sioux Falls, SD 57117.

16. Defendant TU is a corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

17. Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

18. Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

19. Defendants TB, JPMCB, AEC, and CBNA, are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

20. TU, EQ, and EXP are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(f)). TU, EQ, and EXP regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

### FACTUAL ALLEGATIONS

21. Plaintiff is a consumer who is the victim of inaccurate reporting by TB, JPMCB, AEC, CBNA, TU, EQ, and EXP.

22. CRAs, including TU, EQ, and EXP have a duty under the FCRA to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681(e)(B).

23. Further, both CRAs and Furnishers have a duty to conduct reasonable investigations when notified of disputed information found in a consumer credit report.

4

24.     Here, Plaintiff is a victim of inaccurate reporting regarding alleged accounts with TB, JPMCB, AEC, and CBNA, inaccuracies found in credit reports published by the CRA Defendants.

25.     The following is a description of the inaccuracies and failures of all Defendants to investigate and update their reporting of the accounts in question.

26.     In October 2025, Plaintiff discovered that the accounts he had with TB, JPMCB, AEC, and CBNA that were reporting on his credit file were being reported in error.

27.     The TB, JPMCB, AEC, and CBNA accounts harmed the Plaintiff because each account does not accurately depict Plaintiff's credit history and creditworthiness.

28.     That TB was reporting the account on Plaintiff's credit report with TU, EQ, and EXP.

29.     That TB was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

30.     Plaintiff sent disputes letters to Equifax, Experian, and Transunion in September of 2025 and October of 2025.

31.     On or about 10/07/25, Plaintiff sent dispute letters via USPS mail to TU, EQ, and EXP notifying the account with TB as disputed.

32.     These letters provided notice of the inaccurate reporting to TU, EQ, and EXP.

33.     Plaintiff disputed the reporting of an account listed as a charge-off yet still showing a balance. Plaintiff stated a charge-off should not report an outstanding balance, demanded immediate reinvestigation, and requested removal of the account from the credit report due to false and misleading reporting.

34.     The three credit reporting agencies were not uniformly reporting the same information for the TB account.

35.     The payment history did not match up across the three credit reporting agencies.

36. Once TU, EQ, and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case TB.

37. TU, EQ, and EXP received the letters sent by Plaintiff.

38. TU, EQ, and EXP transmitted notice of these disputes to TB via an Automated Credit Dispute Verification form ("ACDV").

39. TB was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

40. Alternatively, TU, EQ, and EXP negligently failed to send notice of the disputes to TB after receiving notice of the disputes from Plaintiff.

41. Alternatively, TU, EQ, and EXP willfully failed to send notice of the disputes to TB after receiving notice of the disputes from Plaintiff.

42. After receiving this notice, in any subsequent voluntary reporting, TB must then include the dispute notation on said account.

43. Defendant TB re-reported the account to TU and EXP on 11/30/25.

44. Defendant TB re-reported the account to EQ on 11/01/25.

45. On or about 12/10/25, Plaintiff received an updated credit file from TU.

46. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to TB.

47. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify TB.

48. TU failed to properly reinvestigate Plaintiff's dispute.

49. As a result of TU's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

50. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

51. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

52. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

53. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

54. On or about 12/10/25, Plaintiff received an updated credit file from EXP.

55. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to TB.

56. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify TB.

57. EXP failed to properly reinvestigate Plaintiff's dispute.

58. As a result of EXP's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

59. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

60. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

61. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

62. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

63. On or about 12/10/25, Plaintiff received an updated credit file from EQ.

64. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to TB.

65.     Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify TB.

66.     EQ failed to properly reinvestigate Plaintiff's dispute.

67.     As a result of EQ's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

68.     EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

69.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

70.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

71.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

72.     That the updated 12/10/25 credit report did not contain updated marked as disputed information.

73.     The updated 12/10/25 credit report contained inaccurate information.

74.     TB failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the tradeline.

75.     TU, EQ, and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

76.     TB must have voluntarily updated the Plaintiff's alleged account by communicating with TU, EQ, and EXP.

77.     That TB furnished information to TU, EQ, and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by TU, EQ, and EXP of the disputes.

8

78. That TB failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report after Plaintiff disputed the account on 10/07/25 and was given notice of such by TU, EQ, and EXP.

79. In the alternative, if TB properly updated the account information and marked the account as disputed with TU, EQ, and EXP after receiving notification of disputes from Plaintiff, then TU, EQ, and EXP failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report.

80. That TB never properly updated the account information or marked the account as disputed even after receiving information of the disputes from TU, EQ, and EXP.

81. Alternatively, TU, EQ, and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from TB in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

82. That JPMCB was reporting the account on Plaintiff's credit report with TU, EQ, and EXP.

83. That JPMCB was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

84. On or about 10/07/25, Plaintiff sent dispute letters via USPS mail to TU, EQ, and EXP notifying the accounts with JPMCB as disputed.

85. Plaintiff disputed the JPMCB accounts 426684******, 434631******, and 414720******.

86. These letters provided notice of the inaccurate reporting to TU, EQ, and EXP.

87. Plaintiff disputed the reporting of an account listed as a charge-off yet still showing a balance.

88. The payment histories were not showing the payments uniformly across the credit reporting agencies.

89. Once TU, EQ, and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case JPMCB.

90. TU, EQ, and EXP received the letters sent by Plaintiff.

91. TU, EQ, and EXP transmitted notice of these disputes to JPMCB via an Automated Credit Dispute Verification form ("ACDV").

92. JPMCB was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

93. Alternatively, TU, EQ, and EXP negligently failed to send notice of the disputes to JPMCB after receiving notice of the disputes from Plaintiff.

94. Alternatively, TU, EQ, and EXP willfully failed to send notice of the disputes to JPMCB after receiving notice of the disputes from Plaintiff.

95. After receiving this notice, in any subsequent voluntary reporting, JPMCB must then include the dispute notation on said account.

96. Defendant JPMCB re-reported the account to TU and EXP on 11/11/25, 11/26/25, 11/28/25, and 12/02/25.

97. Defendant JPMCB re-reported the account to EQ on 11/01/25 and 12/01/25.

98. On or about 12/10/25, Plaintiff received an updated credit file from TU.

99. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to JPMCB.

100. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify JPMCB.

101. TU failed to properly reinvestigate Plaintiff's dispute.

102. As a result of TU's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

103. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

104. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

105. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

106. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

107. On or about 12/10/25, Plaintiff received an updated credit file from EQ.

108. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to JPMCB.

109. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify JPMCB.

110. EQ failed to properly reinvestigate Plaintiff's dispute.

111. As a result of EQ's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

112. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

113. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

114. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

115. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

116. On or about 12/10/25, Plaintiff received an updated credit file from EXP.

117. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to JPMCB.

118. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify JPMCB.

119. EXP failed to properly reinvestigate Plaintiff's dispute.

120. As a result of EXP's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

121. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

122. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

123. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

124. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

125. That the updated 12/10/25 credit report did not contain updated marked as disputed information.

126. The updated 12/10/25 credit report contained inaccurate information.

127. JPMCB failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged tradeline.

128. TU, EQ, and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

129. JPMCB must have voluntarily updated the Plaintiff's alleged account by communicating with TU, EQ, and EXP.

130. That JPMCB furnished information to TU, EQ, and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by TU, EQ, and EXP of the disputes.

131. That JPMCB failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report after Plaintiff disputed the account on 10/07/25 and was given notice of such by TU, EQ, and EXP.

132. In the alternative, if JPMCB properly updated the account information and marked the account as disputed with TU, EQ, and EXP after receiving notification of disputes from Plaintiff, then TU, EQ, and EXP failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report.

133. That JPMCB never properly updated the account information or marked the account as disputed even after receiving information of the disputes from TU, EQ, and EXP.

134. Alternatively, TU, EQ, and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from JPMCB in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

135. That AEC was reporting the account on Plaintiff's credit report with TU, EQ, and EXP.

136. That AEC was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

137. On or about 10/07/25, Plaintiff sent dispute letters via USPS mail to TU, EQ, and EXP notifying the account with AEC as disputed.

138. The AEC account is reported as AMEX 349992*****.

139. These letters provided notice of the inaccurate reporting to TU, EQ, and EXP.

140. Plaintiff disputed the reporting of an account listed as a charge-off yet still showing a balance.

141. The payment history across the TU, EQ, and EXP reports were showing different "late payment" dates.

142. Once TU, EQ, and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case AEC.

143. TU, EQ, and EXP received the letters sent by Plaintiff.

144. TU, EQ, and EXP transmitted notice of these disputes to AEC via an Automated Credit Dispute Verification form ("ACDV").

145. AEC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

146. Alternatively, TU, EQ, and EXP negligently failed to send notice of the disputes to AEC after receiving notice of the disputes from Plaintiff.

147. Alternatively, TU, EQ, and EXP willfully failed to send notice of the disputes to AEC after receiving notice of the disputes from Plaintiff.

148. After receiving this notice, in any subsequent voluntary reporting, AEC must then include the dispute notation on said account.

149. Defendant AEC re-reported the account to TU and EXP on 03/17/21.

150. Defendant AEC re-reported the account to EQ on 03/01/21.

151. On or about 12/10/25, Plaintiff received an updated credit file from TU.

152. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to AEC.

153. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify AEC.

154. TU failed to properly reinvestigate Plaintiff's dispute.

155. As a result of TU's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

156. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

157. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

158. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

159. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

160. On or about 12/10/25, Plaintiff received an updated credit file from EQ.

161. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to AEC.

162. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify AEC.

163. EQ failed to properly reinvestigate Plaintiff's dispute.

164. As a result of EQ's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

165. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

15

166. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

167. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

168. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

169. On or about 12/10/25, Plaintiff received an updated credit file from EXP.

170. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to AEC.

171. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify AEC.

172. EXP failed to properly reinvestigate Plaintiff's dispute.

173. As a result of EXP's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

174. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

175. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

176. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

177. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

178. That the updated 12/10/25 credit report did not contain updated marked as disputed information.

179. The updated 12/10/25 credit report contained inaccurate information.

180. AEC failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged tradeline.

16

181. TU, EQ, and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

182. AEC must have voluntarily updated the Plaintiff's alleged account by communicating with TU, EQ, and EXP.

183. That AEC furnished information to TU, EQ, and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by TU, EQ, and EXP of the disputes.

184. That AEC failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report after Plaintiff disputed the account on 10/07/25 and was given notice of such by TU, EQ, and EXP.

185. In the alternative, if AEC properly updated the account information and marked the account as disputed with TU, EQ, and EXP after receiving notification of disputes from Plaintiff, TU, EQ, and EXP failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report.

186. That AEC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from TU, EQ, and EXP.

187. Alternatively, TU, EQ, and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from AEC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

188. That CBNA was reporting the account on Plaintiff's credit report with TU, EQ, and EXP.

189. That CBNA was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

190. On or about 10/07/25, Plaintiff sent dispute letters via USPS mail to TU, EQ, and EXP notifying the account with CBNA as disputed.

191. These letters provided notice of the inaccurate reporting to TU, EQ, and EXP.

192. The CBNA accounts in question are reported as: Citicards CBNA 552479**** and Citicards CBNA 546616****.

193. Plaintiff disputed the reporting of the accounts that was settled in full before being marked as charged off.

194. Once TU, EQ, and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CBNA.

195. TU, EQ, and EXP received the letters sent by Plaintiff.

196. TU, EQ, and EXP transmitted notice of these disputes to CBNA via an Automated Credit Dispute Verification form ("ACDV").

197. CBNA was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

198. Alternatively, TU, EQ, and EXP negligently failed to send notice of the disputes to CBNA after receiving notice of the disputes from Plaintiff.

199. Alternatively, TU, EQ, and EXP willfully failed to send notice of the disputes to CBNA after receiving notice of the disputes from Plaintiff.

200. After receiving this notice, in any subsequent voluntary reporting, CBNA must then include the dispute notation on said account.

201. Defendant CBNA re-reported the account to TU and EXP on 12/19/24.

202. Defendant CBNA re-reported the account to EQ on 12/01/24.

203. On or about 12/10/25, Plaintiff received an updated credit file from TU.

204. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to CBNA.

205. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify CBNA.

206. TU failed to properly reinvestigate Plaintiff's dispute.

207. As a result of TU's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

208. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

209. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

210. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

211. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

212. On or about 12/10/25, Plaintiff received an updated credit file from EQ.

213. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CBNA.

214. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CBNA.

215. EQ failed to properly reinvestigate Plaintiff's dispute.

216. As a result of EQ's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

217. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

218. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

219. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

220. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

221. On or about 12/10/25, Plaintiff received an updated credit file from EXP.

222. That the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CBNA.

223. Alternatively, that the updated 12/10/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CBNA.

224. EXP failed to properly reinvestigate Plaintiff's dispute.

225. As a result of EXP's failure to reinvestigate, the updated 12/10/25 credit report contained inaccurate information.

226. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

227. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

228. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

229. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

230. That the updated 12/10/25 credit report did not contain updated marked as disputed information.

231. The updated 12/10/25 credit report contained inaccurate information.

20

232. CBNA failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged tradeline.

233. TU, EQ, and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

234. CBNA must have voluntarily updated the Plaintiff's alleged account by communicating with TU, EQ, and EXP.

235. That CBNA furnished information to TU, EQ, and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by TU, EQ, and EXP of the disputes.

236. That CBNA failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report after Plaintiff disputed the account on 10/07/25 and was given notice of such by TU, EQ, and EXP.

237. In the alternative, if CBNA properly updated the account information and marked the account as disputed with TU, EQ, and EXP after receiving notification of disputes from Plaintiff, then TU, EQ, and EXP failed to update the account information and mark the account as disputed on the updated 12/10/25 credit report.

238. That CBNA never properly updated the account information or marked the account as disputed even after receiving information of the disputes from TU, EQ, and EXP.

239. Alternatively, TU, EQ, and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CBNA in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

240. All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

241.     The CRA Defendants' failure to report the Account correctly and failure to report the accurate status and accurate balance harmed Plaintiff's credit score and would, at least, mislead a third-party reviewing Plaintiff's credit history.

242.     If the Furnishers had complied with their duties to reinvestigate the accounts when they received notice of the disputes, they would have conducted reasonable investigations and updated the information they were furnishing accordingly.

243.     If the CRA Defendants would have complied with their statutory duties, inaccurate information concerning the accounts would not have been reported despite notice from Plaintiff.

244.     Further, after receiving Plaintiff's disputes concerning the inaccurate information of the accounts, TU, EQ, and EXP are required to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit file(s) it published and maintained concerning Plaintiff.

245.     Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive Practices of the TB, JPMCB, AEC, and CBNA, and/or TU, EQ, and EXP.

246.     Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading collection communications by TB, JPMCB, AEC, and CBNA, and/or TU, EQ, and EXP.

247.     Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by TB, JPMCB, AEC, and CBNA, and/or TU, EQ, and EXP.

248.     Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

249.     Plaintiff's injury-in-fact is fairly traceable to the challenged representations of TB, JPMCB, AEC, and CBNA, and/or TU, EQ, and EXP.

250.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

251.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

252.    Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with TU, EQ, and EXP.

253.    TU, EQ, and EXP failed to follow reasonable procedures to keep Plaintiff's credit file accurate by including incomplete information on Plaintiff's credit file; TU, EQ, and EXP failed to send notice of the disputes received from Plaintiff to the furnishers as required, and TU, EQ, and EXP failed to update Plaintiff's credit file to ensure accuracy; TU, EQ, and EXP violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

254.    As a result of this conduct, action and inaction of TU, EQ, and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

255.    TU, EQ, and EXP's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

256.    Due to TU, EQ, and EXP's conduct, Plaintiff is entitled to recovery costs and attorney's fees from TU, EQ, and EXP in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Nicholas Matthew Barkley, Prays that this Court:

A.    Declare that TU, EQ, and EXP's credit reporting actions violate the FCRA;

23

B.      For TU, EQ, and EXP's willful violations, enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TU, EQ, and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      For TU, EQ, and EXP's negligent violations, enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TU, EQ, and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D.      Or, in the alternative, enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TU, EQ, and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E.      Grant other such further relief as deemed just and proper.

## Count II: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

257.      Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

258.      TU, EQ, and EXP were reporting inaccurate and incomplete information on Plaintiff's credit report.

259.      TU, EQ, and EXP's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

260.      Plaintiff disputed the accuracy of his credit report directly with TU, EQ, and EXP via dispute letters sent through USPS.

261.      Defendants TU, EQ, and EXP violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

262.      TU, EQ, and EXP failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

24

263. Defendants TU, EQ, and EXP willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to TB, JPMCB, AEC, and CBNA; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

264. As a result of this conduct, action and inaction of TU, EQ, and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

265. TU, EQ, and EXP's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

266. The Plaintiff is entitled to recovery costs and attorney's fees from TU, EQ, and EXP in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Nicholas Matthew Barkley prays that this Court:

A. Declare that TU, EQ, and EXP's credit reporting actions violate the FCRA;

B. Enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TU, EQ, and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. Or, in the alternative, enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TU, EQ, and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D. Grant other such further relief as deemed just and proper.

### Count III: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

267.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

268.    Defendants TB, JPMCB, AEC, and CBNA violated 15 U.S.C. § 1681s-2(b) by continuing to report the TB, JPMCB, AEC, and CBNA, representations within Plaintiff's credit file with TU, EQ, and EXP without also including a notation that this tradeline was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the TB, JPMCB, AEC, and CBNA representations; by failing to review all relevant information regarding same; by failing to accurately respond to TB, JPMCB, AEC, and CBNA; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the TB, JPMCB, AEC, and CBNA representations to the consumer reporting agencies.

269.    As a result of this conduct, action and inaction of TB, JPMCB, AEC, and CBNA, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

270.    Defendants TB, JPMCB, AEC, and CBNA's, conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

271.    Plaintiff is entitled to recover costs and attorney's fees from TB, JPMCB, AEC, and CBNA, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Nicholas Matthew Barkley, Prays that this Court:

26

A.      Declare that TB, JPMCB, AEC, and CBNA's, credit reporting actions violate the FCRA;

B.      Enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TB, JPMCB, AEC, and CBNA, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      Or, in the alternative, enter judgment in favor of Plaintiff Nicholas Matthew Barkley, and against TB, JPMCB, AEC, and CBNA, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.      Grant other such further relief as deemed just and proper.

## JURY DEMAND

272.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: June 16, 2026

Respectfully Submitted,

**HALVORSEN KLOTE DAVIS**

By:     /s/ Seid Music

Seid Music, #76713
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hkdlawstl.com
seid@hkdlawstl.com
*Attorneys for Plaintiff*

27